UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ANDREW PEAL MOORE, II ,**

        **Plaintiff,**

v.                                             **Case No: 6:23-cv-1163-PGB-DCI**

**ADVENTIST HEALTH SYSTEM
SUNBELT HEALTHCARE
CORPORATION, CHRIS TIMS,
ASHLEY CARUANA and ANNE
CLAUDE ROY,**

        **Defendants.**

REPORT AND RECOMMENDATION

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:**    **Defendants' Motion to Dismiss the Complaint (Doc. 11)**
>
> **FILED:**      **July 31, 2023**
>
> ---
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part.**

**I.**    **Procedural Background**

Andrew Peal Moore, II (Plaintiff) initiated this case against Adventist Health System Sunbelt Heathcare Corporation (AdventHealth), Chris Tims (Tims), Ashely Caruana (Caruana), and Anne Claude Roy (Roy) for discrimination and constructive discharge in violation of 42 U.S.C. § 1981(a); Age Discrimination/Willful Violation of the ADEA; conspiracy to interfere with civil rights in violation of 42 U.S.C. § 1985; and negligence to prevent a conspiracy in violation of 42 U.S.C. § 1986. Doc. 1. Defendants have filed a joint Motion to Dismiss pursuant to Federal

Rule of Civil Procedure 12(b)(6).  Doc. 11 (the Motion).  Plaintiff has filed a Response in Opposition to the Motion.  Doc. 13 (the Response).

The District Judge has referred the Motion and for the reasons stated in this report the undersigned recommends that it be granted in part.

## II.    Allegations in the Complaint

Plaintiff's claims arise from (1) a specific event that allegedly occurred at work on April 10, 2023; (2) AdventHealth's alleged "refusal to select or promote" Plaintiff for a management position; and (3) more generally, the hostile work environment that led to his constructive discharge on April 14, 2023.  Doc. 1 at 6-20.

### A.  April 10, 2023

Plaintiff is a 71-year-old African American individual who was formerly employed with AdventHealth.  *Id*. at 3.  Plaintiff claims that in 2022, AdventHealth hired him as a Behavior Health Technician/Orlando Psyche Technician responsible for patient observation to ensure patient safety.  *Id*. at 5.  Plaintiff states that on April 10, 2023, he was transferred to an assignment "over a Baker Act patient at the Emergency Department ('ED')."  *Id*. at 6.  Plaintiff performed observations of the patient from outside of the patient's room in the hospital hallway with the door ajar.  *Id*.  Plaintiff states that the patient behaved in an aggressive and threatening manner.  *Id*.

During the patient observation, an unidentified AdventHealth employee (unidentified employee) approached Plaintiff, distracted him, and "effectively ordered him to fill out, sign off on, and authenticate a legal form regarding the Baker Act patient in a way that would have constituted fraud or falsification of the form if he had obeyed her" and, therefore, Plaintiff refused

to do so. *Id*. at 6-7.[1] Plaintiff states that the unidentified employee became angry and argued with Plaintiff. *Id*. at 6.

Plaintiff alleges that, during the argument, "the White Baker Act patient screamed at him, verbally harassed him, used vulgar and abusive language," and threatened Plaintiff. *Id*. at 7. The patient charged at Plaintiff, tried to physically attack him, and caused Plaintiff to fear for his safety. *Id*. Plaintiff states that he told the patient to "back off". *Id*.

Another AdventHealth employee who Plaintiff identifies as "Security Office Thomas" arrived and "said something to the effect that he was going to call Plaintiff Moore's supervisor on him and have him removed because Plaintiff Moore was supposedly 'engaging' the White Baker Act patient, and Plaintiff Moore expressed to Security Officer Thomas that he (Plaintiff Moore) was not going to let anyone harm him, referring to the White Baker Act patient who charged at him and tried to attack him." *Id*. at 7, citing Ex. 1.

Plaintiff then asserts that Caruana and Roy escorted him to "Tims' office to be interrogated as if or under the false pretense that Plaintiff Moore had done something wrong, and all three of them sat down in his office." *Id*. at 7. Plaintiff states that he told Tims that he was "being targeted and singled out and discriminated against because he had done nothing wrong and the Adventhealth Asian-American employee and Security Officer Thomas should be made accountable for their conduct and actions." *Id*. at 8.

Tims acknowledged that the "AdventHealth Asian-American employee was not a supervisor and acknowledged that she gave Plaintiff Moore wrong instructions regarding the legal

---

[1] Plaintiff describes this individual as Asian-American who AdventHealth employed in a non-supervisory or managerial role. *Id*.

form, but he reprimanded Plaintiff Moore for refusing to obey her instructions and ordered Plaintiff Moore that in the future, whenever she tells him to do something, then he had better do it." *Id*.

Plaintiff alleges that Plaintiff's race was Tims' motivating factor for the reprimand, target, and removal "from his job assigned at the [Emergency Department]" and any other proffered reason for the action is pretext. *Id*. at 9-10.

### B. Refusal to Select or Promote

Plaintiff also alleges that AdventHealth hired him for a "relatively 'low-paying' non-management position/title" but Plaintiff also applied for "management positions for which he was fully qualified". *Id*. at 10, citing Ex. 1 – 24. Plaintiff alleges that AdventHeath's human resource department rejected his application and resume and "failed or refused to select him or promote him to any of those positions because of his race." *Id*. at 10.

Plaintiff also claims that AdventHealth's human resource department willfully refused to select or promote him because of his age. *Id*. at 12. Plaintiff, 71 years old, states that he was at least 40 years old and AdventHealth selected or promoted "person(s) whose age was less than 40 year of age **or** person(s) whose age was 40 years of age or older **but was less** than Plaintiff Moore's age." *Id*. at 12 (emphasis in original). Plaintiff asserts that his advanced age was a motivating factor in AdventHealth's refusal to select or promote him. Plaintiff again claims that any proffered reason for the action against him is pretext and that AdventHealth is vicariously liable under the doctrine of *respondeat superior* for the human resource department employees' actions. *Id*.

### C. Hostile Work Environment

Plaintiff alleges that Advent Health has a policy regarding aggressive behavior that reads as follows:

> **Attention: Patients and Visitors:**
>
> Our hospital is a healing environment.
> Aggressive behavior will not be tolerated.
> Aggressive behavior includes, but is not limited to:
>
> - Physical abuse/assault/battery.
> - Verbal Harassment.
> - Abusive or vulgar language.
> - Sexual language directed at others.
> - Threats.
> - Incidents may result in removal from this facility and prosecution.
> - It is a felony to assault a hospital employee in Florida. 784.07.

*Id*. at 20 (emphasis in original).

Plaintiff alleges that from November 2022 through April 10, 2023, Plaintiff was subjected at work to "constant and persistent hostilities" and AdventHealth refused to remove the aggressive patients from the facility. *Id*. at 19. Plaintiff claims that he reported these incidents on April 10, 2023 to Tims. *Id*. at 19-20. Plaintiff states that he informed Tims that the day's event "was a culmination of the constant abuse, assaults, and verbal harassment he had suffered since his employment at AdventHealth including racial slurs and racial epithets that were hurled at him by patients and that patients had physically assaulted him and threatened him on several occasions." *Id*. at 8.

During the April 10, 2023 meeting with Tims, Plaintiff asked Tims why the hospital does not enforce its own policy regarding the removal of aggressive patients, and Tims "indicated" that the "policy would not be enforced because the hospital receives its revenue from those patients". *Id*. at 8-9. Tims also "laughed and tried to trivialize Plaintiff Moore's situation" when Plaintiff asked if he was aware of the "devastating effect that race discrimination has on a victim of race discrimination." *Id*. at 9. Plaintiff alleges that he "broke down and began to cry profusely & uncontrollably, as he was traumatized by the five-months long incidents of physical abuse &

assaults, racial slurs, dehumanization, and threats by patients and the events that had just transpired on April 10, 2023, including the race discrimination that Defendant Chris Tims was now inflicting on him wherein he targeted & singled out Plaintiff Moore and reprimanded him when he had done nothing wrong but was only performing his job duties, and those five-months long incidents culminated and had taken their toll on Plaintiff Moore, as he uttered out loud through his tears, in Defendant Chris Tims' office, that he was still a human being." *Id.* Plaintiff claims that AdventHealth is vicariously liable for Tims' actions and the events leading to his constructive discharge, and that he sustained injury as a result of the conduct.

### III. Standard

In reviewing a complaint on a Rule 12(b)(6) motion to dismiss, "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing Fed. R. Civ. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Further, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level," *id.* at 555, and cross "the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

IV. **Discussion**

   A. **Counts I and II—Intentional Race Discrimination against AdventHealth in violation of § 1981(a); Age Discrimination/Willful Violation of the ADEA against AdventHealth**

While Defendants move to dismiss the Complaint in its entirety, Defendants provide no analysis or legal basis to dismiss Counts I and II against AdventHealth. Defendants mention that Plaintiff brings Counts I and II for race and age discrimination (Doc. 11 at 2) but go no further to address the substance of these claims. Defendants specify that the *Complaint* should be dismissed because the conspiracy claim is insufficient as a matter of law; the negligence claim is derivative and cannot survive; and Plaintiff fails to state a claim for constructive discharge. Doc. 11 at 2. Those grounds for dismissal, however, relate solely to Counts III, IV, and V. Accordingly, to the extent Defendants move to dismiss Counts I and II pursuant Rule 12(b)(6), the undersigned recommends that they have not satisfied their burden.

The undersigned notes that Plaintiff identifies his former employer as "Adventist Health System Sunbelt Healthcare Corporation (aka AdventHealth)," headquartered in Altamonte Springs, Florida. Doc. 1 at 1. Defendants state in a footnote that Plaintiff's W-2 employer is "Adventist Health System/Sunbelt, Inc. d/b/a AdventHealth Orlando" and Plaintiff has sued the wrong entity. Doc. 11 at 1. Defendants do not say more about this alleged misnomer or request dismissal of Counts I and II on this basis.[2] Assuming *arguendo* the footnote can be construed to include such a request, that request is insufficient. *Orta v. City of Orlando*, 2015 WL 2365834, at *2 (M.D. Fla. May 18, 2015) ("At the outset, this argument is presented solely in a footnote and is not, therefore, properly before the Court.") (citing *Dresser v. Healthcare Servs. Inc.*, 2013 WL

---

[2] Curiously, Defendants address the substance of Count V against AdventHealth but not Counts I and II. Thus, it does not appear that Defendants chose to forego an analysis of Counts I and II simply because Plaintiff allegedly named the wrong entity.

82155, at *10 n.1 (M.D. Fla. Jan. 7, 2013); *see also SEC v. Synergy Settlement Servs., Inc.*, 2023 WL 2633332, at *5 (M.D. Fla. Mar. 24, 2023) (declining to address the defendant's argument raised exclusively in the footnote); *Duncan v. Rushmore Loan Mgmt. Servs., LLC*, 2021 WL 8774248, at *4 (M.D. Fla. Sept. 30, 2021) ("If [d]efendant felt it was important for the [c]ourt to consider these documents, the argument to consider them should have been raised in the body of the motion.").

But even if Defendants included the substance of the footnote within the body of the Motion *and* specified that dismissal is warranted, Defendants still fail to explain the basis for relief.[3]  Based on the foregoing, to the extent Defendant seeks dismissal of Counts I and II, the undersigned recommends that relief be denied.

### B. Count III—Conspiracy to Interfere with Civil Rights against Tims, Caruana, and Roy in violation of § 1985

The undersigned recommends a different outcome with respect to Count III.  Plaintiff alleges that Tims, Caruana, and Roy conspired to deprive Plaintiff of the equal protection of the laws and Constitutional rights in violation of § 1985.  Specifically, Plaintiff claims that Tims, Caruana, and Roy conspired to remove Plaintiff from his assignment in the Emergency Department and to punish him for telling the patient to "back off"; telling Security Officer Thomas that he would not let anyone harm Plaintiff; and refusing to obey the unidentified employee who tried to

---

[3] Assuming Plaintiff's W-2 employer is distinguishable from the named party and Plaintiff has identified the "wrong entity", it seems that dismissal under Rule 12(b)(6) is not necessarily warranted. *See Wilson v. Sprint/United Mgmt. Co.*, 2011 WL 2670184, at *8, n.1. (M.D. Fla. July 8, 2011) (directing the clerk to correct the defendant's name after the defendant stated in a motion to dismiss that the plaintiff named the wrong entity and the plaintiff did not contravert the representation); *see also Worthy v. Woody Folsom Autos.*, 2019 WL 2320877, at *1 (S.D. Ga. May 29, 2019) (explaining that even though the defendant showed that the plaintiff sued the wrong entity, the court previously denied the motion to dismiss and granted the plaintiff's leave to amend with instruction to name the correct entity).

force him to sign the form. Doc. 1 at 13. Plaintiff contends that Defendants had a meeting of the minds to "engage in plots or schemes and participate in unlawful conduct, and/or they tacitly or explicitly agreed to perform certain lawful acts in an unlawful manner" to deprive Plaintiff of his rights. *Id*. at 14. Plaintiff alleges that Defendants Tims, Carauana, and Roy conspired with one another and in concert with Security Officer Thomas and the unidentified employee. *Id*.

Defendants argue that the claim is due to be dismissed pursuant to the intracorporate conspiracy doctrine. Doc. 11 at 5. "The intracorporate conspiracy doctrine holds that acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). Pursuant to the doctrine, "a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Id*. "This doctrine has been applied not only to private corporations but also to public, government entities." *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000) ("The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity consisting of the corporation and its agents to conspire with itself, just as it is not possible for an individual person to conspire with himself.").

The only conspirators identified are employees of AdventHealth, and the acts are alleged to have been within the scope of their employment. Accordingly, the undersigned agrees that Plaintiff's conspiracy claim at Count III is due to be dismissed.

Plaintiff argues, however, that his claim is not subject to dismissal because Tims, Carauna, and Roy acted outside of the scope of employment and "beyond their authority" when they did not comply with AdventHealth's policy against aggressive behavior. Doc. 13 at 9-10. First, Plaintiff does not make the scope of employment allegation in the Complaint and, therefore, it is not

properly considered. *See Burgess v. Religious Tech. Ctr., Inc.* 600 F. App'x 657, 665 (11th Cir. 2015) ("We repeatedly have held that plaintiffs cannot amend their complaint through a response to a motion to dismiss.") (citation omitted); *Orta*, 2015 WL 2365834, at *5, n.3 (M.D. Fla. May 18, 2015) ("The Court does not look beyond the four corners of the Complaint in ruling on a motion to dismiss. . . and '"[i]t is axiomatic that a plaintiff cannot amend the complaint by arguments of counsel made in opposition to a motion to dismiss,' *Kuhn v. Thompson*, 304 F.Supp.2d 1313, 1321 (M.D. Ala. 2004).")

Second, even if Plaintiff included the allegation in the pleading, it has no merit. "The proper inquiry is not whether the person's job functions include violating constitutional rights, but rather 'whether the employee . . . was performing a function that, but for the alleged constitutional infirmity, was within the ambit of the officer's scope of authority (i.e., job-related duties) and in furtherance of the employer's business.'" *Steffens v. Nocco*, 2021 WL 1020967, at *4 (M.D. Fla. Mar. 17, 2021) (quoting *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010)).

The undersigned recommends that Defendants' alleged decision to reassign Plaintiff to a department and "reprimand" Plaintiff as punishment is within the scope of Tims, Caruana, and Roy's employment. *See Steffens*, 2021 WL 1020967, at *4 (rejecting the plaintiff's argument that the doctrine was inapplicable because the conspirators' alleged racial and employment discrimination is outside the scope of duties and finding that the scope of the sheriff's authority includes the ability to promote and reassign employees).

Accordingly, the undersigned recommends that the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claim and Count III should be dismissed.

### C. Count IV—Negligence to Prevent Conspiracy against Tims in violation of § 1986

If the Court agrees that Defendants are entitled to relief on Count III pursuant to the intracorporate conspiracy doctrine, then Count IV should suffer the same fate. Plaintiff alleges that Tims knew "that the illegal acts carried out in the 42 USC § 1985 conspiracy were about to be committed, and he had power to prevent same acts and failed to prevent such acts." Doc. 1 at 18. Defendants contend that Count IV is due to be dismissed as a matter of law because the claim is derived from the dismissed § 1985 claim. Doc. 11 at 11. "Section 1986 provides a cause of action against anyone who has knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having the power to prevent or aid in preventing the commission of the same, neglects or refuses to do so." *Park v. City of Atlanta*, 120 F.3d 1157, 1159 (11th Cir. 1997) (citation omitted). "Section 1986 claims are therefore derivative of § 1985 violations." *Id*. at 1159-60.

Because Plaintiff failed to state a conspiracy claim under § 1985(3), he cannot sustain a claim under § 1986. *See Farese v. Scherer*, 342 F.3d 1223, 1232 n.12 (11th Cir. 2003) (where there is no underlying conspiracy to support a § 1985 claim, the derivative § 1986 claim must also fail); *see also Jackman v. 20th Judicial Circuit Court Admin.*, 2020 WL 3895425, at *4 (MD. Fla. July 10, 2020) (finding that since the plaintiff did not plead an actionable § 1985(3) conspiracy, his § 1986 claim was due to be dismissed).

Based on the foregoing, the undersigned recommends that Defendants' request to dismiss Count IV be granted.

### D. Count V—Constructive Discharge against AdventHealth in violation of § 1981(a)

In Count V, Plaintiff alleges that AdventHealth constructively discharged him in violation of § 1981.[4] Plaintiff's claim in Count V is pled as constructive discharge with a hostile work environment component. "Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1268 (11th Cir. 2021) (citation omitted). To maintain a constructive discharge claim based on hostile work environment, [the plaintiff] must show that her working conditions were so difficult . . . that a reasonable person would have felt compelled to resign.'" *Barrow v. Ga. Pac. Corp.*, 144 Fed. App'x 54, 59 (11th Cir. 2005) (quoting *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001)). "To prove a constructive discharge, a plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." *Smith v. United Mech., LLC*, 2022 WL 17338858, at *6 (M.D. Fla. Nov. 30, 2022) (citing *Bryant*, 575 F.3d at 1298)). "

Defendants assert that the alleged conduct and statements do not amount to an actionable hostile work environment constructive discharge claim. In making that assertion, Defendants focus upon Plaintiff's allegations that he was: (1) subjected to constant and persistent hostilities from November 2022 to April 2023; (2) "targeted" and "singled out" and ultimately reprimanded; (3) and forced to resign after Advent Health took no corrective action. *Id*. at 15. Defendants

---

[4] The framework applied to constructive discharge claims brough pursuant to Title VII applies to constructive discharge under § 1981. *See Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009) (noting that Title VII and § 1981 have the same requirements); *see also*, *Powell-Marcello v. Palm Beach Cnty.*, 2019 U.S. Dist. LEXIS 248762 at *5 (S.D. Fla. Mar. 27, 2019) ("Section § 1981 and Title VII are not coextensive, but when § 1981 is used as a basis for relief parallel to that provided by Title VII, the elements of a § 1981 claim are identical to the elements of a Title VII claim.") (citations omitted).

argue that those allegations do not rise to the level of the requisite severity. *Id*. Defendants contend that Plaintiff's allegations are conclusory and based on the single incident on April 10, 2023. *Id*.

Defendants assert that the "mere utterances of epithets engendering offensive feelings in an employee are not sufficient" and Plaintiff makes no claim that the alleged conduct or comments interfered with his work performance. *Id*. at 16, 17 (citing *Freese v. Wuesthoff Health Sys., Inc.*, 2006 WL 1382111, at *4 (M.D. Fla. 2006); *Thompson v. City of Miami Beach*, 990 F.Supp. 2d 1335, 1341 (S.D. Fla. 1341).[5] Also, Defendant states that unless an employer is given sufficient time to remedy a situation, the constructive discharge will generally be found not to have occurred. *Id*. at 18 (citing *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996)). In sum, Defendants contend that Plaintiff's "vague and conclusory allegations" do not sufficiently assert that the hostile conduct was severe and pervasive, and Plaintiff has not sufficiently pled that he was constructively discharged because work "became so intolerable that his resignation was a fitting response." *Id*. at 18-19.

Defendants have not convinced the undersigned that dismissal is appropriate at this juncture. A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). Even without a liberal construction, Plaintiff's allegations are not vague. Plaintiff asserts that during his employment, he was subjected to the patients' racial slurs, abusive language, verbal

---

[5] Defendants explain that to evaluate the objective severity of the purported harassment, courts must consider (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with the employee's job performance. Doc. 11 at 14-15, citing *Harris v. Forklift*, 510 U.S. 17, 21-22 (1993)).

harassment, threats, and physical assaults. Plaintiff claims that he brought this matter to management and AdventHealth failed to take corrective action in direct contravention of its policy. Plaintiff claims that AdventHealth tolerated the aggressive behavior and subjected him to discrimination leading to his constructive discharge. Along with the claim that he was passed over for a management position because of his race and age, Plaintiff asserts that he was subjected to the hostile environment over time, he complained, was reprimanded, and he believed he had no reasonable alternative for his safety and resigned on April 14, 2023. Accepting these allegations as true for purposes of the motion to dismiss and viewing them in the light most favorable to Plaintiff, the undersigned concludes these facts could be construed as sufficient to state a claim.

With respect to the argument regarding the need to give sufficient time for remedy, Defendants raise the issue in a general manner with no analysis and the undersigned is not otherwise convinced that AdventHealth was not given a reasonable chance to remedy the situation based on the allegations. Even if the Court considers only the time and events between the alleged complaint to Tims on April 10, 2023, and Plaintiff's resignation on April 14, 2023, there is nothing in the Motion to show that this timeline, standing alone, necessitates dismissal under Rule 12(b)(6).

As such, the undersigned recommends that Defendant is not entitled to relief with respect to Count V.

### V. Conclusion

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss (Doc. 11) be:

1. **GRANTED in part** to the extent that the Court **DISMISS** Counts III and IV of the Complaint; and

2. **DENIED** in all other respects, including the request for fees and costs pursuant to 42 U.S.C. § 1988.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on October 2, 2023.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy